UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT L. KOENIG,<br><br>                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security,<br><br>                    Defendant. | CIVIL ACTION<br>No. 4:18-cv-40210-TSH |

### REPORT AND RECOMMENDATION

**April 20, 2020**

Hennessy, M.J.,

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert Koenig moves to reverse the Commissioner's decision to deny his application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"). [Dkt. No. 17]. The Commissioner, in turn, moves for an order affirming his decision. [Dkt. Nos. 23, 26]. The motions are ripe for adjudication. For the reasons stated below, I recommend that the Commissioner's motion be GRANTED, and Plaintiff's motion be DENIED.

---

[1] Plaintiff commenced the instant action against Nancy Berryhill, who at that time was the Acting Commissioner of the Social Security Administration. Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019. See Jim Borland, Social Security Welcomes its New Commissioner, SOCIAL SECURITY ADMINISTRATION BLOG (June 17, 2019), https://blog.ssa.gov/social-security-welcomes-its-new-commissioner/. Andrew Saul has been automatically substituted as the party defendant in this action. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."); see also 42 U.S.C. § 405(g) (noting that an action survives notwithstanding any change of the official occupying the office of Commissioner of the Social Security Administration).

1

**I.      PROCEDURAL HISTORY**

Plaintiff applied for SSDI and SSI benefits on February 8, 2016, alleging an onset date of September 30, 2014. [AR 24]. The Commissioner denied the claims on October 17, 2016 and again upon reconsideration on January 25, 2017. [AR 138-39, 181-86]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on January 19, 2018. [AR 54, 187-88, 204-05]. Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing. [AR 54]. Both Plaintiff and the VE testified, and Plaintiff's attorney made a closing statement. [AR 56-110].

On February 28, 2018, the ALJ determined that Plaintiff was not disabled. [AR 21-47]. On August 31, 2018, the Appeals Council ("AC") denied Plaintiff's request for review making the February 28, 2018 decision the Commissioner's final decision. [AR 9-13]. On December 20, 2018, Plaintiff filed a complaint in this court seeking review of the Commissioner's decision pursuant to 42 U.S.C. 405(g). [Dkt. No. 1]. On June 11, 2019, Plaintiff filed a motion for an order reversing the Commissioner's decision. [Dkt. No. 17]. On September 5, 2019, the Commissioner moved to affirm. [Dkt. No. 23]. On October 3, 2019, Judge Hillman referred the case to the undersigned for a report and recommendation on the parties' cross-motions. [Dkt. No. 27].

**II.     SELECTED MEDICAL AND OPINION EVIDENCE**

      **A.     Back and Knee Pain Medical Evidence**

Among other conditions, the medical records show that Plaintiff has a history of lower back pain and right knee pain. In 2014, an x-ray showed mild arthritic changes of the cervical spine. [AR 389]. At that time, orthopedic surgeon George Lewinnek, M.D., did not recommend injections or surgery for treatment. [385]. On March 16, 2015, following treatment from a chiropractor, Plaintiff reported to Parmender Bagga, M.D., his primary care physician, that his

2

back pain was stable. [AR 373]. On February 6, 2016, Dr. Bagga diagnosed Plaintiff with degenerative disc disease. [AR 365].

On March 21, 2017, Dr. Bagga treated Plaintiff following a car accident. [AR 828]. Plaintiff reported back, neck, and knee pain. [AR 828]. On May 22, 2017, orthopedic surgeon Michael Brown, M.D., diagnosed Plaintiff with a horizontal meniscus tear and a partial anterior cruciate ligament ("ACL") tear of his right knee. [AR 817]. On June 8, 2017, Dr. Brown performed surgery to repair Plaintiff's meniscus. [AR 806-07]. Dr. Brown did not reconstruct Plaintiff's partially torn ACL. [AR 806-07]. On September 27, 2017, Dr. Brown reported that Plaintiff was doing well subjectively and objectively. [AR 819]. Dr. Brown provided Plaintiff with a note, at Plaintiff's request, stating Plaintiff was able to work so long as he did not lift more than ten pounds until after October 15, 2017. [AR 819].

Starting July 14, 2017, Plaintiff underwent post-knee surgery physical therapy. [AR 629-88]. At discharge on October 3, 2017, Plaintiff demonstrated full range of motion in his knee and full strength in his right lower extremity. [AR 629]. Plaintiff's physical therapist wrote that Plaintiff met his long-term goal of eighty-five percent improvement and was able to ambulate with minimal difficulty. [AR 629]. Plaintiff reported that he continued to experience low back pain which limited his ability to engage in increased physical activity. [AR 629].

      **B.**    **Addiction and Mental Health Medical Evidence**

The medical records show that Plaintiff has a history of mental health conditions and a history of substance abuse. Plaintiff exhibited depressive symptoms, an inability to control his anger, and addictive and dependent behavior. Plaintiff underwent intermittent treatment at Shrewsbury Youth & Family Services ("SY&F") between December 2012 and June 2016. [AR 404-93]. In April 2013, Plaintiff drank an average of six to nine drinks per day. [AR 405]. He

was diagnosed with Bipolar II disorder and received a Global Assessment Functioning ("GAF") score of 60.[2] [AR 405-06]. In May 2014, Plaintiff reported that his substance abuse was "no longer an issue" and that he had "no urges to drink or smoke or use drugs." [AR 426]. In September 2014, Plaintiff was "confident" he could obtain a job. [AR 442]. In March 2015, Plaintiff recognized that his substance use was a potential barrier to meeting his treatment goals. [AR 458]. In May 2015, Plaintiff used alcohol and cannabis regularly, but Plaintiff "became more honest about his substance use over the course of therapy, leading to a change in diagnosis." [AR 431]. Plaintiff's clinician diagnosed him with persistent depressive disorder and mood disorder. [AR 431]. She assigned Plaintiff a GAF score of 65. [AR 432]. Plaintiff and his therapist were "confident" that Plaintiff could function well without therapy, but that Plaintiff "may desire to resume therapy if his depression worsens, if his substance abuse becomes more severe and negatively impacts his life, or if he has any other major difficulties." [AR 351]. In June 2016, Plaintiff reported that he was "more mindful of his drinking now." [AR 463]. Plaintiff stated he "ultimately needs substance abuse treatment." [AR 463]. His clinician assigned him a GAF score of 50. [AR 464].

Dr. Bagga also provided treatment for Plaintiff's substance abuse disorders. [AR 365-66, 371-72, 375-78, 397]. In June 2016, Dr. Bagga wrote that Plaintiff "says he has cut down to ten [drinks] a week, but [there is] no way to assess if he is actually telling the truth." [AR 505]. In March 2017, Dr. Bagga wrote that Plaintiff drank six to ten drinks a day.[3] [AR 827-28]. On May

---

[2] A GAF score is a number between 1 and 100 that measures "the clinician's judgment of the individual's overall level of functioning" with lower scores indicating lower levels of functioning. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). A GAF score of 51 to 60 indicates moderate symptoms or moderate impairment of social or occupational functioning. Id.

[3] In the same note, Dr. Bagga stated that Plaintiff was in Alcoholics Anonymous and had abstained for over a year.

6, 2017, Dr. Bagga wrote that Plaintiff's "biggest priority is to maintain abstinence from alcohol and marijuana."  [AR 826].

On November 12, 2016, Plaintiff began treatment with clinical psychologist Dennis Canali, Ph.D.  [AR 537-41].  On Plaintiff's clinical intake form, Dr. Canali indicated that there was no issue with substance abuse.[4]  [AR 537].  Dr. Canali's treatment notes indicated that he was targeting Plaintiff's symptoms of dysthymia, insomnia, and anger.  [AR 751-68].  In October 2017, Dr. Canali's treatment notes indicated that Plaintiff remained unable to control anger and aggression.  [AR 752].

Plaintiff received mental health treatment from psychiatrist Ahjad Bahnassi, M.D., from April to October of 2017.  [AR 770-89].  Dr. Bahnassi assessed Plaintiff with recurrent major depression, major depressive disorder, intermittent explosive disorder, and generalized anxiety disorder.  [AR 785].  Dr. Bahnassi reported that as of April 2017, Plaintiff was one year sober with no illicit drug use.  [AR 784].  Dr. Bahnassi's notes indicate that Plaintiff's thought processes, judgment, awareness, attention span, and language skills were normal.  [AR 774].

**C.   Opinion Evidence**

1.   <u>Plaintiff's Treating Source Opinion Evidence</u>

On February 12, 2016, Dr. Bagga opined that Plaintiff was unable to work due to his psychiatric issues. Dr Bagga identified anxiety, bipolar disorder, and episodic mood disorder among his diagnoses.  [AR 532].  In January 2017, Dr. Canali completed a Massachusetts Emergency Aid to the Elderly, Disabled and Children ("EAEDC") mental examination for Plaintiff.  [AR 527-31, 547-54].  Dr. Canali diagnosed Plaintiff with dysthymia and noted that Plaintiff had been sober for over a year.  [AR 527-31, 543-44].  Dr. Canali opined that Plaintiff

---

[4] This form is mostly handwritten.  I am unable to read Dr. Canali's hand-written report relating to Plaintiff's substance abuse disorder.

5

could independently handle activities of daily living and simple routines. [AR 544]. Dr. Canali further noted that Plaintiff could become aggressive and impatient when faced with complexity. [AR 545]. Dr. Canali assigned a GAF score of 52. [AR 543]. Dr. Canali expected Plaintiff's impairments to last six to twelve months. [AR 531]. In a May 1, 2017 letter of support for Plaintiff's disability claim, Dr. Canali opined that "dysthymic periods with intervening pain from a herniated back disc . . . interfere with his daily levels of functioning. [Plaintiff] remains with significant anger which makes for safety concerns around co-workers." [AR 556]. On May 5, 2017, Dr. Bagga opined that Plaintiff was not able to work "due to psychiatric issues." [AR 558].

        2.        <u>Consultant Opinion Evidence</u>

On September 30, 2016, Milton Taylor, Ph.D., conducted a consultive psychological examination for the Disability Determination Services ("DDS") Division of the Massachusetts Rehabilitation Commission. [AR 521-26]. During the examination, Plaintiff reported that he used cannabis every day, drank three times per week, consumed up to ten drinks at a time, and had drunk the night prior to his examination. [AR 521]. Plaintiff stated he lost work because of his substance abuse. [AR 521-22]. Dr. Taylor opined that Plaintiff's "substance abuse affects many areas of his life including his relationships, overall mood, and job history." [AR 524]. Dr. Taylor assigned Plaintiff a GAF score of 50 and found it "highly unlikely" that Plaintiff would be able to engage in any type of sustained work. [AR 525].

A consultant for the DDS, Kenneth Higgins, Ph.D., reviewed Plaintiff's treatment records on October 7, 2016. [AR 115-19]. Dr. Higgins evaluated Plaintiff as having the medically determinable impairments of substance addiction disorders, affective disorders, personality disorders, and anxiety disorders. [AR 117]. Dr. Higgins opined that Plaintiff had "moderate" restrictions of activities of daily living, "moderate" difficulties maintaining social functioning,

"moderate" difficulties in maintaining concentration, persistence, or pace, and had experienced no episodes of decompensation. [AR 118]. Dr. Higgins formulated a mental RFC that the "[e]vidence supports no more than moderate limitations for psych when clean and sober." [AR 119]. Dr. Higgins found Plaintiff moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, respond appropriately to changes in the work setting. [AR 122-23]. Dr. Higgins opined that there were no significant limitations in Plaintiff's ability to carry out simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without distraction; make simple work-related decisions, ask simple questions or request assistance; be aware of normal hazards; travel in unfamiliar places or use public transportation; and, set realistic goals. [AR 122-23].

DDS consultant Elaine Horn, M.D., reviewed Plaintiff's medical records and provided an RFC opinion for Plaintiff's physical functional limitations. [AR 120-21]. Dr. Horn opined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. [AR 120]. Dr. Horn also opined that Plaintiff could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. [AR 120].

Based on Dr. Higgins and Dr. Horn's assessments, disability adjudicator Laurie Rachins found Plaintiff not disabled on October 17, 2016. [AR 124]. On January 24, 2017, DDS consultant Lawrence Langer, Ph.D., affirmed Dr. Higgins' mental RFC. [AR 147-48, 150-52]. On January 12, 2017, DDS consultant, Henry Astarjian, M.D., affirmed the physical RFC of Dr. Horn with the

7

exception that Dr. Astarjian would limit Plaintiff to never climbing ladders, ropes or scaffolds. [AR 148-50]. On reconsideration, disability adjudicator Marcia Clouter reviewed Plaintiff's file and affirmed the finding that Plaintiff was not disabled. [AR 169].

## III.  LEGAL STANDARDS

### A.  Standard of Review

The Act provides in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . .. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..

42 U.S.C. § 405(g); see also 42 U.S.C. § 1383(c)(3).

Thus, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). "Substantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Indeed, the court "must uphold the Secretary's findings 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Under such review, "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters

entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam)).

### B. Social Security Disability Standard

The Commissioner evaluates if an individual is disabled under the Act using a sequential five-step process:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted; 4) if the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

"The applicant has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Once the applicant establishes the inability to perform any past relevant work, "the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)).

### IV. **THE ALJ'S DECISION**

On February 28, 2018, the ALJ denied Plaintiff benefits. [AR 47]. In her analysis of Plaintiff's claim, the ALJ conducted the five-part analysis required by the regulations. See 20 C.F.R. § 416.920(a). At Step One, the ALJ found that Plaintiff met the insured status through December 31, 2018 and had not engaged in substantial gainful activity since September 30, 2014, the date of alleged disability onset. [AR 27]. At the second step, the ALJ found that Plaintiff

9

suffered from seven severe impairments: alcohol dependence, cannabis abuse, depression/bipolar disorder, substance induced mood disorder, adjustment disorder with anxious and depressed mood, personality disorder, obesity, and degenerative changes of lumbar spine L5-S1. [AR 27].

The ALJ also found that Plaintiff had non-severe impairments of hypertension, prediabetes, vertigo, mild left sensorineural hearing loss, knee injury from a motor vehicle accident, and a history of coronary artery disease. [AR 27]. In finding that Plaintiff's knee injury was not severe, the ALJ assigned partial weight to the opinion of Dr. Brown which stated Plaintiff could return to work. [AR 28]. The ALJ also found that Plaintiff's knee impairment, related to the motor vehicle accident, lasted less than twelve months. [AR 29].

At Step Three, the ALJ found that Plaintiff's mental health disorders, including the substance use disorder, met listings 12.04, 12.06, and 12.08, of 20 C.F.R. Part 404, Subpt. P, App'x 1. [AR 29-30]. Though this finding would normally result in an entitlement to disability benefits without proceeding to Step Four, when there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must determine whether the DAA is a material factor contributing to the disability. See 20 C.F.R. § 416.935(a). This required the ALJ to conduct the five-step analysis for a second time, while discounting the effects of substance abuse. See SSR 13-2p.

For her re-analysis, the ALJ found that the medical records were not clear as to when Plaintiff became sober – if he ever did. [AR 30]. However, using Plaintiff's medical records, she determined that periods of sobriety and lack of sobriety were associated with differences in Plaintiff's functional capacity. [AR 30]. During the time that Plaintiff used drugs and alcohol, the ALJ found that Plaintiff's functional capacity diminished. [AR 30]. The ALJ gave the opinions stated in the SY&F medical records from 2012 to 2015 partial weight because, based on Plaintiff's reported limitations, she found Plaintiff more limited than the stated opinions. [AR 30-31]. The

ALJ assigned significant weight to the June 2016 opinion from SY&F. [AR 464]. The ALJ found Plaintiff's GAF score of 50 was consistent with the record and credited the opinion that Plaintiff's depressive disorder worsened with increased substance abuse. [AR 32]. The ALJ also assigned great weight to the September 30, 2016 opinion of Dr. Taylor who evaluated the impact of Plaintiff's substance abuse on his mental health and functioning. [AR 32-33]. The ALJ credited Dr. Taylor's assessment that Plaintiff's depressive symptoms occurred more frequently with alcohol and cannabis use. [AR 33]. Though the ALJ found that the record was not clear as to the exact period of Plaintiff's sobriety, at Step Two of her re-analysis, the ALJ determined that if Plaintiff "stopped the substance abuse . . . [Plaintiff] would continue to have a severe impairment of combination of impairments." [AR 33].

At Step Three of her re-analysis, the ALJ found that, when not using substances, Plaintiff would have had "moderate" limitations in understanding, remembering, or applying information [AR 34], "moderate" limitations in interacting with others [AR 34], "moderate" limitations with regard to concentration, persistence, or pace [AR 34], and "moderate" limitations in adapting or managing oneself. [AR 34]. Thus, the ALJ determined that with sobriety, Plaintiff would not have an impairment that meets any listing in 20 C.F.R. Part 404, Subpt. P, App'x 1.

Before continuing to Step Four, the ALJ assessed Plaintiff's RFC independent of the effects of marijuana and alcohol abuse. [AR 35]. The ALJ found Plaintiff was able to perform a limited range of light work. [AR 43-44]. The ALJ supported this conclusion by citing specific treatment notes from Dr. Bahnassi, Dr. Taylor, and the opinions of the DDS consultants. [AR 43-44].

In making her RFC assessment, the ALJ considered the opinion letters of Plaintiff's treating physicians and the consultant examiners. [AR 42]. The ALJ assigned little weight to the opinion of Dr. Canali because of Dr. Canali's reliance on Plaintiff's subjective allegations, not

objective findings. [AR 42]. The ALJ further found that Dr. Canali's opinion was inconsistent with Dr. Canali's own records and the records of Dr. Bahnassi. [AR 42]. The ALJ assigned significant weight to the opinions of Dr. Horn, Dr. Higgins, and Dr. Langer. [AR 42-43].

At Step Four, the ALJ found that even if Plaintiff stopped using substances, he could not perform his past work. [AR 45]. The ALJ then proceeded to Step Five. [AR 45-46]. The ALJ found that, if Plaintiff stopped using substances, there would be jobs in significant numbers in the national economy he could have performed. [AR 46]. Consequently, the ALJ concluded that Plaintiff was not disabled. [AR 47].

## IV. ANALYSIS

Plaintiff challenges the Commissioner's final decision on two primary grounds. First, Plaintiff argues that the ALJ's DAA RFC analysis lacked substantial evidentiary support. Second, Plaintiff argues that ALJ erred in finding that Plaintiff could perform light work.

### A. The ALJ's DAA RFC Analysis

The Act, as amended, provides that an individual otherwise determined to be disabled, "shall not be considered disabled . . . if alcoholism or drug addiction ... [is] a contributing factor material" to that determination. 42 U.S.C. § 423(d)(2)(C). Thus, if a claimant is determined to be disabled and there is medical evidence of substance abuse, then the ALJ "must go one step further" and determine whether substance abuse is a material factor contributing to the disability. Benelli v. Comm'r of Soc. Sec., No. 14-CV-10785 (MBB), 2015 WL 3441992, at *22 (D. Mass. May 28, 2015) (quoting Brown v. Apfel, 71 F. Supp. 2d 28, 35 (D.R.I. 1999)). In assessing materiality, the question is "whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). If the answer is no, then the claimant's DAA is material to the initial disability determination and the claimant will be

considered "not disabled." See 20 C.F.R. § 404.1535; Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012). If the answer is yes, and the claimant's DAA is not material, then the claimant will be found disabled. 20 C.F.R. § 404.1535.

This requires the ALJ to engage in the five-step sequential analysis twice to assess the effects, if any, of the claimant's substance abuse. See SSR 13-2p. The ALJ's decision must address which impairments would remain in the absence of any substance use, and whether those remaining impairments would be disabling either alone or in combination. 20 C.F.R. § 404.1535(b)(2); SSR 13-2p. The burden of proving DAA immateriality lies with the claimant. See Frazier v. Astrue, 1:10-CV-10051 (PBS), 2010 WL 5866215, at *6 (D. Mass. Feb. 22, 2010). The question of materiality is reserved to the ALJ, and the ALJ's decision will be upheld if it is supported by substantial evidence. See Benelli, 2015 WL 3441992, at *24 (citing Cage, 692 F.3d at 126-27).

Plaintiff argues that the ALJ erred by finding that "the medical evidence on the record was unclear as to when [Plaintiff] stopped using substances." [AR 33]. Specifically, Plaintiff contends that the record shows that he was sober at the time of his treatment with Dr. Canali and that it was error for the ALJ to discount Dr. Canali's opinion as to the severity of his functional limitations. Thus, Plaintiff argues that the ALJ's RFC finding if he stopped using drugs and alcohol must be reversed because it failed to properly consider Dr. Canali's opinion. I disagree.

First, the ALJ's findings as to the lack of clarity as to when, if ever, Plaintiff stopped using alcohol and/or marijuana is supported by substantial evidence. The record shows that Plaintiff was abusing alcohol at the time of his evaluation with Dr. Taylor on September 30, 2016. [AR 521]. However, on November 12, 2016, only two months later, Dr. Canali indicated that Plaintiff had no issues with substance abuse. [AR 537]. As of January 2017, Dr. Canali reported that Plaintiff had

been sober for over a year. [AR 527-31, 543-44]. Yet on August 19, 2017, Dr. Bagga reported that Plaintiff still drank six to ten drinks a day. [AR 827-28]. Elsewhere, Dr. Bagga stated that he could not assess whether Plaintiff was abstaining from alcohol. [AR 505]. These reports cannot be reconciled and suggest that if Plaintiff did cease using substances the date of his sobriety is unascertainable. With no clear date as to when Plaintiff stopped his alcohol and marijuana use, the ALJ justifiably rejected Plaintiff's statements to Dr. Canali that he was sober at the time of his treatment and proceeded with the analysis as she did. See 20 C.F.R. § 404.1535(a); SSR 13-2p.

Plaintiff next contends that the ALJ's non-DAA RFC is not supported by substantial evidence because she erred in discounting the opinion of treating physician Dr. Canali. Under the applicable regulations, an ALJ does not have to give a treating physician's opinion controlling weight. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (observing that "[t]he law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians"). The regulations allow the ALJ to discount the weight given to a treating source opinion where such opinion is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. See Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004); 20 C.F.R. § 404.1527(c)(2)-(4); 416.927(c)(2)-(4); see also SSR 96-2p. In such circumstances, to determine what weight to grant the treating source opinion, the ALJ considers various factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(c)(2)-(6); 416.927(c)(2)-(6). The ALJ must explain the weight given to a treating source opinion and the reasons supporting that decision. See 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2).

Here, the ALJ gave little weight the opinion of Dr. Canali. The ALJ found that Dr. Canali was misinformed about Plaintiff's substance abuse and incorrectly believed that Plaintiff abstained from drugs and alcohol. [AR 42]. The exclusive source of Dr. Canali's reports on Plaintiff's sobriety came from Plaintiff's own statements. [AR 537]. However, as recounted above, less than two months before Plaintiff reported he was not using alcohol, he told Dr. Taylor that he was consuming up to ten drinks per day. [AR 524]. Given this record, and the questionable reliability of Plaintiff's statements, the ALJ discounted Dr. Canali's January report. The ALJ also factored Dr. Canali's limited treatment relationship – only a few months at the time the report was drafted – into her decision to discount Dr. Canali's opinion. [AR 42]

The ALJ specifically discredited Dr. Canali's opinion that Plaintiff was a danger to coworkers. [AR 556]. Dr. Canali opined that this threat to the safety of potential coworkers precluded Plaintiff from being able to perform work. [AR 556]. However, Dr. Bahnassi, who treated Plaintiff contemporaneously with Dr. Canali, consistently reported that Plaintiff's thought processes, judgment, awareness, attention span, and language skills were normal. [AR 774]. It was the responsibility of the ALJ, not this court, to resolve this conflict in the evidence as to the severity of Plaintiff's anger issues. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). In addition to the disagreement between Dr. Bahnassi's treatment records and Dr. Canali's opinion, the ALJ found that Dr. Canali's opinion was not supported by his own records. Indeed, Dr. Canali's notes do not provide examples of instances where Plaintiff's anger manifested in physical violence. Rather, Dr. Canali's notes show that he treated Plaintiff's anger through self-reflection exercises such as meditation, yoga, and journaling. [AR 756 ("Reviewed his triggers to anger and reviewed anger log.")]. Accordingly, the ALJ did not err by finding that

Dr. Canali's opinion that Plaintiff posed a threat to coworkers was inconsistent with Plaintiff's medical records.

Finally, the question then becomes whether the ALJ properly supported her non-DAA RFC after discounting Dr. Canali's opinion. The undersigned concludes that she did based on the state agency opinions. Generally, in configuring a non-DAA RFC, an ALJ can either draw from medical evidence from a period of sobriety, or rely on hypothetical, predictive evidence. See, e.g., Benelli, 2015 WL 3441992, at *23; see also Parra, 481 F.3d at 748-49; SSR 13-2p, 2013 WL 621536, at *12. Here, the ALJ did the former: she credited the opinions of Plaintiff's treating physicians as to Plaintiff's remaining limitations from a period of reported abstinence. [AR 43]. The ALJ identified 2017 as a year in which Plaintiff has periods of sobriety. [AR 33]. Dr. Bahnassi's notes, which reflect normal thought processes and judgment, support the ALJ's non-DAA RFC. [AR 774]. The ALJ also relied on the opinions of the DDS consultants. [AR 119]. Dr. Higgins, relying on Plaintiff's presentation during his exam with Dr. Taylor, formed the opinion that Plaintiff only had moderate limitations when sober. [AR 131-32]. The DDS consultants also noted that Plaintiff's medical records show that he was able to independently perform activities of daily living and simple routines. [AR 147]. Thus, the non-DAA RFC is indeed supported by substantial evidence, and the undersigned finds no error.

### B. The ALJ's Finding that Plaintiff Could Perform Light Work

Plaintiff challenges the ALJ's finding that Plaintiff could perform light work. Plaintiff argues that the ALJ failed to properly consider the limitations caused by Plaintiff's right knee injury and history of back pain.

1. Knee Injury

In order to qualify for social security benefits, Plaintiff, who bears the burden of proof,

16

must establish both that he has a severe impairment and that it has lasted for a continuous twelve-month period. See 42 U.S.C. §§ 416(i)(1), 423(d); 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement), 404.1512 (burden of proof), 416.905(a) (defining disability). In March 2017, Plaintiff suffered a horizontal meniscus tear and a partial ACL tear of his right knee. [AR 817, 828]. Prior to this date, Plaintiff did not experience limitations from knee pain. [AR 813]. Plaintiff underwent surgery to repair his meniscus and then followed surgery with four months of physical therapy. At the end of that time, Plaintiff asked Dr. Brown, Plaintiff's surgeon, to write a note stating he was able to return to work. [AR 819]. On September 27, 2017, Dr. Brown opined that Plaintiff could return to work. [AR 819]. On October 3, 2017, Plaintiff's date of discharge from physical therapy, Plaintiff's physical therapist wrote that Plaintiff "demonstrates full knee [range of motion], full strength in the [right lower extremity] . . .." [AR 629]. Plaintiff's physical therapist further wrote that Plaintiff "is able to ambulate with minimal difficulty most of the times [sic]" and that Plaintiff "negotiates 2 flights of [step-over-step] pattern with min[imal] … difficulty." [AR 629]. On October 25, 2017, Plaintiff walked with an antalgic gait, but did not use an assistive device, had full strength, and had "grossly unremarkable x-rays." [AR 813-14]. The records reflect that Plaintiff's knee injury lasted less than twelve months. Accordingly, the ALJ's finding that Plaintiff's knee impairment was not a severe impairment was supported by substantial evidence.

To the extent that the non-severe impairments from Plaintiff's knee injury impacted his RFC determination, the ALJ accounted for those impairments by finding that Plaintiff can only occasionally climb ramps and stairs. See Perez v. Astrue, 2011 WL 6132547 at *4 (D. Mass. Dec. 7, 2011) (finding a Step Two error harmless when the ALJ considered all symptoms "both severe and non-severe, in assessing Plaintiff's residual functional capacity and there is no indication that

the ALJ failed to consider the cumulative effect of those impairments"). Thus, even if Plaintiff could show that the ALJ improperly found his knee injury to be non-severe, Plaintiff was unable to show how his knee injury resulted in a more limited RFC than found by the ALJ.

### 2. Back Pain

At Step Two, the ALJ found that degenerative changes to Plaintiff's lumbar spine constituted a severe disability. [AR 27]. At Step Four, she found that this disability caused modest limitations at most and the ALJ gave significant weight to the opinion of Dr. Horn. [AR 43]. Plaintiff assigns error to this finding because he contends that it is inconsistent with his medical records and his testimony at the hearing.

An ALJ is responsible for determining a claimant's residual functional capacity based on the relevant evidence. See 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Here, Dr. Lewinnek described Plaintiff's degenerative disc disease as "relatively normal" and did not recommend treating with surgery or an injection. [AR 385]. Indeed, even after Plaintiff's diagnosis, his back pain is described as causing minimal functional limitations. [AR 817, 828]. Plaintiff relies on a medical record from Dr. Bagga in which he states that Plaintiff's "back does act up and does stop him from doing physical work." [AR 365]. However, when providing his opinion as to Plaintiff's limitations on his ability to work, Dr. Bagga did not opine that Plaintiff's back pain precluded him from working – limiting his opinion to the disabling effects of Plaintiff's mental health disorders. [AR 532, 558]. After reviewing these medical records, Dr. Horn and Dr. Astarjian provided opinions as to the limiting effects of Plaintiff's back pain. [AR 120, 150]. Both of these DDS consultants identified the limitations associated with Plaintiff's back pain and still found that Plaintiff could perform a limited range of light work. [AR 134]. The ALJ appropriately credited these opinions and her finding reflects these opinions.

Plaintiff contends that his hearing testimony about his back pain being a "major issue for sitting for any long period of time," [AR 71-72], shows increased functional limitations which preclude the finding that he could perform light work. The ALJ was entitled to reject this testimony after providing a supported explanation for why she did not find Plaintiff's subjective complaints credible. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 22-23 (1st Cir. 1986). Here, the ALJ did so, explaining how Plaintiff's claims that he could not groom himself were inconsistent with the medical record and prior subjective statements. [AR 37]. During his examination with Dr. Taylor, Plaintiff reported that he had "no major physical restrictions." [AR 523]. Citing to medical records and expert opinions, the ALJ found that Plaintiff could perform light work with additional limitations after accounting for Plaintiff's back pain and knee injury. Therefore, the ALJ's RFC determination that Plaintiff could perform light works was not in error.

## **CONCLUSION**

For the reasons set forth above, I recommend that Commissioner's motion to affirm his prior decision [Dkt. No. 23] be GRANTED, and I recommend that Plaintiff's motion to reverse be DENIED [Dkt. No. 17].[5]

/s/ David H. Hennessy
David H. Hennessy
U.S. Magistrate Judge

---

[5] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).